

**Dated: June 23, 2017**

**The following is ORDERED:**

Sarah A Hall
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 15-14320-SAH |
| THOMAS W. BROWN | ) | |
| and SANDRA D. BROWN, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| ROBERT S. GRASSMANN | ) | |
| and LAURA GRASSMANN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. Pro. 16-01041-SAH |
| | ) | |
| THOMAS W. BROWN | ) | |
| and SANDRA D. BROWN, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT [DOCS. 14, 15] AND
SUPPLEMENT TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. 27]**

Before the Court are the:

1.    Complaint [Doc. 1], filed by plaintiffs Robert S. Grassmann and Laura
      Grassmann ("Plaintiffs") on April 1, 2016;

2.      Defendant's [sic] Answer to Complaint to Determine Exception to
        Discharge [Doc. 7], filed by defendants Thomas W. Brown ("T Brown")
        and Sandra D. Brown ("S Brown"; T Brown and S Brown collectively,
        "Defendants") on May 4, 2016;

3.      Defendant's [sic] Motion for Summary Judgment, Supporting Brief and
        Notice of Opportunity for Hearing [Doc. 14], filed by Defendants on
        October 7, 2016 ("Defendants Motion");

4.      Plaintiff's [sic] Motion for Summary Judgment, Brief in Support and
        Notice of Opportunity for Hearing [Doc. 15], filed by Plaintiffs on
        October 13, 2016 ("Plaintiffs Motion");

5.      Response of the Plaintiffs to Defendants [sic] Motion for Summary
        Judgment [Doc. 19], filed by Plaintiffs on October 21, 2016 ("Plaintiffs
        Response");

6.      Defendant's [sic] Objection to Plaintiff's [sic] Motion for Summary Judgment and
        Supporting Brief [Doc. 21], filed by Defendants on October 27, 2016
        ("Defendants Response");

7.      Supplement to Plaintiff's [sic] Motion for Summary Judgment [Doc. 27], filed by
        Plaintiffs on April 7, 2017 ("Plaintiffs Supplement"); and

8.      Defendants [sic] Objection to Plaintiff's [sic] Motion for Summary Judgment and
        Supporting Brief [Doc. 29], filed by Defendants on April 19, 2017.

## JURISDICTION

The Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. § 1334(b), and

venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper

pursuant to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by 28 U.S.C.

§ 157(b)(2)(H). Furthermore, Plaintiffs and Defendants consent to entry of final orders and

judgment by the Court in this adversary proceeding [Doc. 10].

## INTRODUCTION

Plaintiffs purchased real property from Defendants by warranty deed, purportedly free and clear of all liens and encumbrances.  In reality, however, Defendants failed to disclose a valid existing lien on the property and further did not pay off the lien with the proceeds following the sale.  Therefore, Plaintiffs sued Defendants in state court for breach of contract and fraud, but Defendants filed their chapter 7 petition before a final judgment could be entered.  After Plaintiffs filed this adversary proceeding, the Court granted relief from the automatic stay to allow the state court litigation to be concluded.  Plaintiffs now have a final state court judgment against Defendants and seek a nondischargeability determination with respect thereto pursuant to 11 U.S.C. § 523(a)(2).  Plaintiffs also seek to deny Defendants their discharge pursuant to 11 U.S.C. § 727(a)(2), (4) and (5).[1]

## UNDISPUTED MATERIAL FACTS

For purposes of Plaintiffs Motion and Defendants Motion, the Court finds that no genuine dispute exists as to the following material facts:

1.      Defendants, <u>via</u> their business Brown's Funeral Parlor, LLC, previously owned a funeral home in Wellston.  The real property was foreclosed upon by Stroud National Bank and sold through a sheriff's sale in April 2014.  Defendants Response, Exhibits 2, 6, 7, and 8.  On their 2015 federal tax return, Defendants reported the transaction and also claimed depreciation deductions with respect to the real property.  Plaintiffs Motion, Exhibit 17.

---

[1]Unless otherwise indicated, hereafter all references to sections are to the Bankruptcy Code, Title 11 of the United States Code.

2.      On February 23, 2015, Defendants sold and conveyed certain real property located on Highway 66 in Chandler, Oklahoma (the "Property") to Plaintiffs, representing and warranting the Property to be free and clear of all judgments, liens, and encumbrances. Plaintiffs Motion, Exhibits 1 and 2.

3.      On February 23, 2015, Defendants received net proceeds from the sale of the Property (after payment of a first mortgage) in the amount of $143,468.09 (the "Sale Proceeds"). The Sale Proceeds were divided between T Brown and S Brown at closing, with each receiving approximately $71,734.05. Plaintiffs Motion, Exhibits 3 and 4.

4.      At the time of the sale, the State of Oklahoma, specifically the Oklahoma Funeral Board ("OFB"), held a judgment lien on the Property (the "OFB Lien"). The OFB Lien arose from a default judgment in the amount of $42,000 entered against T Brown on June 14, 2004. Plaintiffs Motion, Exhibit 5.

5.      Defendants failed to pay off the OFB Lien following sale of the Property. Defendants Response at 2, ¶ 6.

6.      On April 22, 2015, S Brown gave a cashier's check to her son Carson Brown in the amount of $81,639.24, which included her share of the Sale Proceeds. The check was subsequently endorsed over to T Brown who cashed it. Plaintiffs Motion, Exhibits 9 and 10; Defendants Response, Exhibit 2.

7.      On April 23, 2015, Plaintiffs filed suit in the District Court of Lincoln County, Oklahoma (the "State Court") to recover the amount required to release the OFB Lien (the "State Court Action"). Plaintiffs Motion, Exhibit 6.

8.     On May 7, 2015, the State Court entered a restraining order directing Defendants to deposit the Sale Proceeds into court and to provide an accounting of any funds that were missing thereafter.  Plaintiffs Motion, Exhibit 7.

9.     Defendants did not deposit any funds into court, and the accounting they provided (the "Accounting") indicated the Sale Proceeds had been spent within ninety (90) days after the sale.  Plaintiffs Motion, Exhibit 8.

10.     The expenditures from the Sale Proceeds identified by Defendants on the Accounting include:  home purchase $30,000; automobile purchase $5,000; repayment of loans from various individual persons totaling $26,320.50; payments to or on behalf of Defendants' son totaling $5,602; vacation and fishing trip expenses totaling $5,600; and "gambling losses at Chandler, Shawnee, and Watonga of approximately $30,000 to $40,000."  Plaintiffs Motion, Exhibit 8.  In all, the Accounting filed by Defendants generally lists expenditures totaling approximately $132,069 and otherwise states the remainder of the Sale Proceeds was spent on miscellaneous "expenses for sons and day to day living expenses, meals, travel and entertainment."  Plaintiffs Motion, Exhibit 8.  However, the Accounting contains no details and is supported by no documentation whatsoever.

11.     The "home purchase" identified on the Accounting was a single family dwelling located at 321 West First Street in Chandler, Oklahoma (the "Chandler House"), purchased for $30,000, on April 10, 2015, by T Brown in the name of the Sandra Delane Brown Revocable Trust.  Defendants Response, Exhibit 2 at ¶ 6.

12.     Two transfers from the Sale Proceeds *were not* specifically disclosed on the Accounting:

5

       a.      On April 23, 2015, S Brown gave $4,000 to her son Isaac Brown to purchase a vehicle.  Plaintiffs Motion, Exhibit 10.

       b.      During the period March to May 2015, T Brown made gifts of cash to his son Isaac Brown in the approximate amount of $9,300.  Plaintiffs Motion, Exhibit 11.  The Accounting states only "Advancement for business expenses."  Plaintiffs Motion, Exhibit 8.

13.     On October 12, 2015, First American Title Insurance Company ("First American"), a nonparty to this case, paid $25,000 to the OFB to secure a release[2] of the OFB Lien.  Defendants Motion, Exhibits 5 and 6.

14.     Plaintiffs have been reimbursed for any payment they may have made to OFB.  Plaintiffs Response at 4, ¶¶ 5 and 6; Defendants Motion, Exhibit 6.

15.     Plaintiffs filed a motion for summary judgment in the State Court Action, and a hearing was held on November 4, 2015.  Plaintiffs Supplement, Exhibit 18.

16.     Defendants filed their chapter 7 petition ("Petition") on November 9, 2015 (the "Petition Date").  [Doc. 1, Bky. Dkt.].  T Brown filed a joint bankruptcy case using his power of attorney for S Brown without her knowledge.  S Brown was not aware of the bankruptcy filing until shortly before the Section 341 meeting on December 8, 2015.   Defendants Response, Exhibit 2.

17.     The Petition listed the residential address for both Defendants as the Chandler House, with respect to which a homestead exemption was claimed on Schedule C.  [Doc. 1, Bky.

---

[2]The Court notes that the document releasing the OFB Lien is titled "Partial Release of Judgment Lien".  Plaintiffs Motion, Exhibit 5.  On its face, however, it fully releases the Property from the OFB Lien.  Plaintiffs Motion, Exhibit 5.

Dkt.].  However, neither Defendant ever resided in the Chandler House.  Plaintiffs Motion,

Exhibit 12.

18.    Defendants scheduled Plaintiffs as unsecured creditors [Doc. 1 at 18, Bky. Dkt.],

and Plaintiffs filed a proof of claim on June 15, 2016.  Claim 2-1 [Claims Register, Bky. Dkt.].

Defendants did not file an objection to Plaintiffs' proof of claim, and it is deemed allowed.[3]

Trustee's Final Report [Bky. Dkt. 39].

19.    Defendants did not schedule the following assets:

    a.    A 2012 Nissan owned by S Brown that is encumbered by a loan in
        favor of Tinker Credit Union in the amount of $20,490.  Plaintiffs
        Motion, Exhibit 14.

    b.    A 2001 (or 2002) Suburban purchased in the Spring of 2015 for
        between $5,000 and $5,500 by T Brown.  However, according to
        him, the Suburban is owned by Stems and Stones, a business in
        which T Brown has an interest.  Plaintiffs Motion, Exhibit 15.

    c.    Various items of office equipment and furnishings under the
        control of T Brown.  Defendants Response, Exhibit 2 at ¶ 7.

20.    On November 12, 2015, three days after Defendants filed their Petition, the State

Court, without knowledge of the bankruptcy filing, mistakenly entered a Final Journal Entry of

Judgment in favor of Plaintiffs and against Defendants in the amount of $25,000 plus costs of

$273.70, and attorneys fees of $5,000.  Defendants Motion, Exhibit 2.

21.    On February 8, 2016, Defendants filed an amended petition, schedules, and

statement of financial affairs ("Amended Petition"), correcting some of the mistakes which came

_____

[3]Agricredit Corp. v. Harrison (In re Harrison), 987 F.2d 677, 680 (10th Cir. 1993); State of
Kansas ex rel Gordon v. Oliver (In re Oliver), 554 B.R. 493, 503 (Bankr. D. Kan. 2016); In re
Kerrigan-Ronan-Prew, 2013 WL 1191243 (Bankr. D. Colo. 2013).

to light at their original and continued Section 341 meeting of creditors.  [Docs. 19, 20 and 21,

Bky. Dkt.].

22.     Plaintiffs filed their Complaint on April 1, 2016, seeking a nondischargeability

determination of Defendants' debt pursuant to Section 523(a)(2) and a denial of Defendants'

discharge pursuant to Section 727(a)(2), (4) and (5).  [Doc. 1].

23.     After the Defendants Motion and Plaintiffs Motion were filed, the Court lifted the

automatic stay because consideration of such motions would be greatly aided by entry of a final

judgment in the State Court Action.  Therefore, the Court entered its Order on Cross Motions for

Summary Judgment [Doc. 14, 15], Holding Adversary Proceeding in Abeyance, Granting Relief

from the Automatic Stay and Directing Filing of Supplements to Summary Judgment Motions

and Quarterly Status Reports on November 1, 2016 [Doc. 22].

25.     The State Court entered its Order Entering Final Journal Entry of Judgment on

January 9, 2017, incorporating by reference the order previously entered on November 12, 2015,

which granted Plaintiffs judgment in the amount of $25,000 plus costs of $273.70, and attorneys

fees of $5,000 (the "Judgment").   Plaintiffs Supplement, Exhibit 18.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the movant proves that there is no genuine issue as to any

material fact and that it is entitled to summary judgment as a matter of law.  Thom v. Bristol-

Myers Squibb Co., 353 F.3d 848, 851 (10th Cir. 2003) (citing Fed. R. Civ. P. 56(c)).  The movant

bears the burden of demonstrating the absence of disputed material facts warranting summary

judgment.  Gough v. Lincoln Cnty. Bd. of Cnty. Comm'rs, 2016 WL 164632, *1 (W.D. Okla.

2016) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986)).  If the movant has the

8

burden of proof on the claim, the movant must establish each element of its claim or defense by sufficient, competent evidence to set forth a prima facie case.  Reynolds v. Haskins (In re Git-N-Go, Inc.), 2007 WL 2816215 (Bankr. N.D. Okla. 2007) (citing In re Ribozyme Pharm., Inc., Sec. Litig., 209 F.Supp.2d 1106, 1111 (D. Colo. 2002)).

However, a movant who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim or defense.  Thom, 353 F.3d at 851 (citing Celotex, 477 U.S. at 325).  Such a movant will satisfy its burden if it demonstrates the lack of evidence for the nonmovant on an essential element of the nonmovant's claim or defense.  Thom, 353 F.3d at 851 (citing Celotex, 477 U.S. at 325).  If the movant carries this initial burden, the nonmovant bearing the burden of persuasion at trial cannot simply rest on its pleadings; rather, the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts from which a rational trier of fact could find for the nonmovant.  Thom, 353 F.3d at 851 (citing Fed. R. Civ. P. 56(e)).  "The Court's inquiry is whether the facts and evidence identified by the parties present 'a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Gough, 2016 WL 164632, *1 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

"A dispute over a material fact is "genuine" if a rational [fact finder] could find in favor of the nonmoving party on the evidence presented."  Equal Emp't Opportunity Comm'n v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  Further, the record must be considered in the light most favorable to the party opposing summary judgment.  Garrett v. Vaughan (In re

9

Vaughan), 342 B.R. 385, *2 (10th Cir. BAP 2006) (unpub.) (citing <u>Bee v. Greaves</u>, 744 F.2d

1387, 1396 (10th Cir. 1984)).

     In deciding a motion for summary judgment, the Court must first determine which

material facts are undisputed.  "Necessary to the effective rebuttal of a summary judgment

motion is the non-moving party's demonstration that genuine issues of fact remain.  Non-moving

parties raise genuine issues of material fact by controverting the moving party's factual

averments with particularity."  <u>Vaughan</u>, 342 B.R. 385, *3; <u>see also</u> Fed. R. Civ. P. 56(c).  The

non-moving party may not rest on its pleadings but rather must set forth specific facts that it

contends are disputed.  <u>Vaughan</u>, 342 B.R. 385, *2 (citing <u>Applied Genetics Int'l, Inc. v. First

Affiliated Secs., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990)).

     Generally speaking, the issue of intent involving a person's state of mind is a question of

fact that may preclude summary judgment, but there is no *per se* rule that summary judgment is

improper under § 727(a) where intent is an issue.  Therefore, summary judgment is still

appropriate if the facts and circumstances of the case so warrant.  <u>Vaughan</u>, 342 B.R. 385, *5.

Neither is it *per se* inappropriate to grant summary judgment when intent is an element of proof

for a nondischargeability determination under Section 523(a)(2).  <u>Kansas ex rel Gordon v. Oliver

(In re Oliver)</u>, 554 B.R. 493, 501 (Bankr. D. Kan. 2016).

### BURDEN OF PROOF AND RULES OF CONSTRUCTION

     A creditor has the burden of proving the elements of a Section 523 or Section 727 claim

by a preponderance of the evidence.  <u>Grogan v. Garner</u>, 498 U.S. 279, 286 (1991); <u>First Nat'l

Bank of Gordon v. Serafini (In re Serafini)</u>, 938 F.2d 1156, 1157 (10th Cir. 1991).  Once a

creditor establishes the acts complained of, the debtor must then come forward with a credible

10

explanation of his actions.  Cobra Well Testers, LLC v. Carlson (In re Carlson), 356 B.R. 787, *2

(10th Cir. BAP 2008) (citing In re Martin, 88 B.R. 319, 321 (D. Colo. 1988) (unpub.)).  See also

Geyer & Assoc. CPA's, P.C. v. Stewart (In re Stewart), 421 B.R. 603, *2 (10th Cir. BAP 2009).

The ultimate burden, however, remains with the plaintiff seeking to deny a debtor a discharge.

Wieland v. Miller (In re Miller), 448 B.R. 551, 555 (Bankr. N.D. Okla. 2011).

        The exceptions to discharge contained in Section 523(a) are to be narrowly construed and,

because of the fresh start objectives of bankruptcy, doubt is to be resolved in a defendant's favor.

Carlson, 356 B.R. 787, *6 (citing Bellco First Fed. Credit Union v. Kaspar (In re Kaspar), 125

F.3d 1358, 1361 (10th Cir. 1997)).   Similarly, the Court must construe the denial of discharge

provisions in Section 727 "liberally in favor of the debtor, and strictly against the creditor."

Gullickson v. Brown (In re Brown), 108 F.3d 1290, 1292 (10th Cir. 1997) (citation omitted);

Kansas State Bank & Trust v. Vickers (In re Vickers), 577 B.R. 683, 687 (10th Cir. 1978);

Stewart, 421 B.R. 603, *2.   However, a fresh start via bankruptcy discharge is a privilege, not a

right, and is reserved for the honest but unfortunate debtor.  Bauer v. Iannacone (In re Bauer),

298 B.R. 353, 357 (8th Cir. BAP 2003) (citing Grogan v. Garner, 498 U.S. 279, 286-87 (1991)).

## CONCLUSIONS OF LAW

### I.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS WITHOUT MERIT.

        In the Defendants Motion, Defendants contend Plaintiffs are not their creditors and,

therefore, have no standing to bring this adversary proceeding.  Defendants' argument is

premised on their assertions that:  (i) Plaintiffs held only a "void judgment" as of the date

Defendants filed for bankruptcy protection; and (ii) Defendants owe Plaintiffs no debt because

the OFB Lien on the Property was paid off by First American under a title insurance policy.  Both

lines of argument are non-starters and, accordingly, Defendants Motion must be denied.

A.    **Plaintiffs Have Standing as They were Creditors of Defendants as of the
Petition Date.**

The Court agrees with Defendants that the judgment entered in the State Court Action on

November 12, 2015, was void and ineffective because Defendants filed their Petition three days

earlier on November 9, 2015, thereby triggering the automatic stay under 11 U.S.C. § 362.  Ellis

v. Consolidated Diesel Elec. Corp., 894 F.2d 371, 373 (10th Cir. 1990); Rushton v. Bank of Utah

(In re C.W. Mining Co.), 477 B.R. 176, 191 (10th Cir. BAP 2012), aff'd 749 F.3d 895 (10th Cir.

2014).  However, Defendants overlook the very basic point that it is not necessary for Plaintiffs

to possess a judgment in order to have standing to file this adversary proceeding.

Standing to pursue a discharge objection or a discharge exception depends on whether the

plaintiff is a creditor of the debtor.  Lincoln Nat'l Life Ins. Co. v. Silver (In re Silver), 378 B.R.

418 (10th Cir. BAP 2007) (citing 11 U.S.C. § 727(a)); In re Linn, 88 B.R. 365, 366 (Bankr. W.D.

Okla. 1988) (citing Fed. R. Bankr. P. 4007(a)).  In order for Plaintiffs to be creditors, the

Bankruptcy Code **_requires only_** that they hold a **_claim_** against Defendants as of the Petition Date.

Under 11 U.S.C. § 101(10)(A) (emphasis added), "creditor" is defined as an entity (which

includes a person) that has a "claim against the debtor that arose at the time of or before the order

for relief concerning the  debtor."  In turn, a "**_claim_**" is defined by Section 101(5)(A) as a "right

to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed

contingent, matured, unmatured, disputed, undisputed, legal equitable, secured, or unsecured."

Legislative history indicates that Congress intended the Bankruptcy Code's definition of **_claim_** to

be the broadest possible to "ensure that 'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.'" Jaurdon v. Cricket Commc'ns, Inc., 412 F.3d 1156, 1158 (10th Cir. 2005) (quoting Laura B. Bartell, Due Process for the Unknown Future Claim in Bankruptcy–Is This Notice Really Necessary?, 78 Am. Bankr. L.J. 339, 340-41 (2004)).

In this case, about seven months prior to the Petition Date, Defendants sold Plaintiffs the Property by warranty deed representing it was not encumbered in any way when, in fact, it was clearly subject to the OFB Lien.  Plaintiffs' claim against Defendants arose at the time of their discovery of the misrepresentation and conveyance via the faulty deed and, therefore, Plaintiffs are pre-petition creditors of Defendants.  Horton v. Hamilton, 345 P.3d 357, 363 (Okla. 2015). Furthermore,  Plaintiffs filed a proof of claim which, absent any objection, is allowed.  See Undisputed Material Fact ¶ 18.

As a result, Plaintiffs have standing to bring this adversary proceeding because they are creditors of Defendants to whom a debt is owed within the meaning of Section 523(c) and Rule 4007(a).  Likewise, Plaintiffs are creditors within the meaning of Section 727(c)(1), who may object to Defendants being granted a discharge.  See Bankers Healthcare Group, Inc. v. Bilfield (In re Bilfield), 493 B.R. 748, 752 (Bankr. N.D. Ohio 2013).

**B.**     **Under the Collateral Source Rule, Defendants Still Owe Plaintiffs a Debt.**

Defendants also assert Plaintiffs have no standing to bring this adversary proceeding because First American paid off the OFB Lien and, consequently, they owe Plaintiffs no debt. Specifically, Defendants argue:

13

> The undisputed facts here are that Plaintiffs are not the party to whom a debt may be owed. They admit in answer to Interrogatories Nos. 18 through 21, First American paid the OFB to secure a partial release of its judgment lien and, if they (Plaintiffs) had paid any money, they were reimbursed and made whole for such payment by First American. Further, Exhibit 5 is the actual check showing the $25,000.00 was paid directly by First American to the OFB. It is undisputed that Plaintiffs are not the party to whom a debt may be owed and, under the clear terms of Section 523(c)(1) are not entitled to prosecute an action for exception to discharge.

Defendants Motion at 5-6. Critically, Defendants ignore the collateral source rule.

In this case, Plaintiffs' claim, and the Judgment entered against Defendants, are based, in part, on both breach of contract and fraudulent misrepresentation, with the misrepresentation claim being an independent, willful tort under Oklahoma law. Okland Oil Co. v. Conoco Inc., 144 F.3d 1308, 1315 (10th Cir. 1998).

However, under Oklahoma statutes, the measure of a tort victim's damages "is the amount which will compensate for all detriment proximately caused thereby." Okla. Stat. tit. 23, § 61. In Oklahoma, the collateral source rule provides:

> Upon commission of a tort it is the duty of the wrongdoer to answer for the damages wrought by his wrongful act, and that is measured by the whole loss so caused and the receipt of compensation by the injured party from a collateral source wholly independent of the wrongdoer does not operate to lessen the damages recoverable from the person causing the injury.

Denco Bus Lines v. Hargis, 229 P.2d 560, 561 (Syllabus by the Court) (Okla. 1951). See also Blythe v. University of Oklahoma, 82 P.3d 1021, 1026 (Okla. 2003). Insurance is a common form of collateral source compensation, and "it is well settled that damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partially indemnified for loss by insurance effected by the party and to the procurement of which the

wrongdoer did not contribute." <u>Estrada v. Port City Props., Inc.</u>, 258 P.3d 495, 506 n.39 (Okla. 2011).

Under the collateral source rule, the fact that Plaintiffs procured title insurance from First American and it ultimately paid off the OFB Lien does not alter their status as creditors holding a claim against Defendants.  Thus, Plaintiffs have standing to bring this adversary proceeding.

## II.  WITHOUT THE JUDGMENT ROLL, PLAINTIFFS MOTION MUST BE DENIED WITH RESPECT TO THE SECTION 523(A)(2)(A) CLAIM.

Under Section 523(a)(2)(A), debts may be excepted from discharge if they are for money, property, or services obtained by a debtor's false pretenses, false representations, or actual fraud (other than a statement respecting the debtor's or an insider's financial condition).  To prevail on a Section 523(a)(2)(A) claim, a creditor must prove the following elements by a preponderance of the evidence: (1) the debtor made a false representation; (2) the debtor made the representation with the intent to deceive the creditor; (3) the creditor relied on the representation; (4) the creditor's reliance was justifiable; and (5) the debtor's representation caused the creditor to sustain a loss.  <u>Johnson v. Riebesell</u> (<u>In re Riebesell</u>), 586 F.3d 782, 789 (10th Cir. 2009) (citing <u>Fowler Bros. v. Young</u> (<u>In re Young</u>), 91 F.3d 1367, 1373 (10th Cir. 1996)); <u>Cooper v. Lemke</u> (<u>In re Lemke</u>), 423 B.R. 917, 921-22 (10th Cir. BAP 2010).

In this case, Plaintiffs allege they are entitled to summary judgment on their Section 523(a)(2) claim by virtue of the collateral estoppel or issue preclusive effect of the Judgment rendered in the State Court Action.  Specifically, Plaintiffs argue:

> The [J]udgment entered by the [S]tate [C]ourt included specific findings of fact which support a determination in this case that the [Defendants] knowingly made false representations regarding title to the [P]roperty that were relied upon by the Plaintiffs in purchasing the [P]roperty, including

1.)    The [Defendants] entered into a contract to convey the real property free and clear of all liens and encumbrances.

2.)    The [Defendants] signed an Affidavit at the closing representing that the property had no judgment liens.

3.)    The [Defendants] executed a Warranty Deed representing and warranting the title as being free and discharged of all liens.

4.)    The representations made by the [Defendants] were false. The [P]roperty was encumbered by a judgment lien in favor of the State of Oklahoma.

5.)    The [Defendants] were fully aware of the judgment lien at the time the representations were made.

6.)    The Plaintiffs relied upon the representations.

7.)    The [Defendants] received net proceeds from the sale sufficient to pay the judgment lien, but used the funds for their personal use.

Plaintiffs Supplement at 4-5. Plaintiffs, therefore, argue "[t]he findings of fact support a determination that the Defendants obtained money through false pretenses under 11 U.S.C. § 523(a)(2)(A)," and that they are entitled to "judgment as a matter of law against the [Defendants] determining that the indebtedness due the Plaintiff[s] is not subject to discharge under 11 U.S.C. § 523(a)(2)(A)." Plaintiffs Supplement at 5.

The Court agrees that, in some instances, the elements of a bankruptcy nondischargeability claim may be established by collateral estoppel or issue preclusion. See Grogan, 498 U.S. at 284 n.11 ("principles of collateral estoppel apply in bankruptcy proceedings"). However, federal bankruptcy courts must look to state law, i.e. Oklahoma law, in determining whether it is appropriate to give preclusive effect to a prior state court judgment. Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 379-80 (1985). Unfortunately, Plaintiffs have overlooked an important detail of Oklahoma law that is dispositive

16

of their motion. Optima Oil & Gas Co., LLC v. Mewbourne Oil Co., 2009 WL 1773198, *3 (W.D. Okla. 2009).

      In Oklahoma, the doctrine of collateral estoppel is known as issue preclusion. Oklahoma law establishes that "[t]he party relying on the defense of issue preclusion bears the burden of establishing that the issue to be precluded was actually litigated and determined in the prior action between the parties or their privies, and that its resolution was essential to a decision in that action." Salazar v. City of Oklahoma City, 976 P.2d 1056, 1060-61 (Okla. 1999). Additionally, the party seeking preclusive effect is required to produce proof of the terms of the prior judgment. In particular, "[t]hose who rely on a judgment for its issue-preclusive force . . . are duty-bound to produce–as proof of its terms, effect and validity–the ***entire judgment roll*** for the case which culminated in the decision invoked as a bar to relitigation." Hall v. Bolton (In re Bolton), 2017 WL 535265, *2 (Bankr. E.D. Okla. 2017) (quoting Salazar, 976 P.2d at 1061 (footnote omitted)); Optima, 2009 WL 1773198 (quoting Salazar, 976 P.2d at 1061)). The "judgment roll" is defined in Section 32.1 of Title 12 of the Oklahoma Statutes as "the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court[.]"

      Without the entire judgment roll, it is not possible for this Court to determine what issues were actually litigated and the legal standards employed by the State Court. As no preclusive effect can be given to the Judgment, Plaintiffs have not satisfied their burden of proof. See Hagmaier v. Cooley (In re Cooley), 551 B.R. 498, 501 n.2 (Bankr. W.D. Okla. 2016). Therefore, Plaintiffs Motion must be denied with respect to their Section 523(a)(2)(A) claim.

### III.  PLAINTIFFS' MOTION WITH RESPECT TO THE SECTION 727 CLAIMS IS DENIED IN PART AND GRANTED IN PART.

Plaintiffs allege Defendants are not entitled to receive a bankruptcy discharge on numerous grounds.  First, Plaintiffs argue Defendants should be denied a discharge pursuant to Section 727(a)(2)(A) for transferring or concealing their property within one year prior to the Petition Date with the intent to defraud their creditors.  Second, Plaintiffs contend Defendants made material false oaths or accounts in connection with their bankruptcy filing and, therefore, should be denied a discharge pursuant to Section 727(a)(4).  Third and finally, Plaintiffs assert Section 727(a)(5) prevents Defendants from receiving a discharge because they have not satisfactorily explained the disappearance of the Sale Proceeds in the approximately eight months between that transaction and the Petition Date.  As detailed below, the Court concludes Plaintiffs are not entitled to judgment as a matter of law on any of their denial of discharge claims against S Brown, nor their Section 727(a)(2) and (4) claims against T Brown, but should be granted summary judgment on their Section 727(a)(5) claim against T Brown.

### A.  Summary Judgment on Plaintiffs' Section 727(a)(2)(A) Claim Must be Denied.

11 U.S.C. § 727(a)(2)(A) Code provides that a discharge may be denied where

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–

> (A) property of the debtor, within one year before the date of the filing of the petition[.]

Therefore, in order for Plaintiffs to establish a claim to deny Defendants a discharge pursuant to Section 727(a)(2)(A), they must prove:  (1) Defendants or their duly authorized agent; (2) with

intent to hinder, delay or defraud a creditor; (3) took action within one year prior to the Petition

Date; (4) that consisted of transferring, removing, destroying or concealing Defendants' property,

or permitting any of these acts to be done.  <u>Stewart</u>, 421 B.R. 603, *2.

　　　　In their Motion, Plaintiffs allege "substantial gifts to the children were made by

[Defendants] within six (6) months of the date of filing.  The transfers were made without

consideration during a time that [Plaintiffs] were pursuing action to recover the sale proceeds."

Plaintiffs Motion at 9.  Plaintiffs further argue that these facts satisfy the above requirements for

denial of discharge under Section 727(a)(2)(A).  Plaintiffs Motion at 10.  The Court disagrees.

　　　　The alleged "gifts" Plaintiffs base their claim on are:

　　　a.　　Gift of money in the amount of $81,639.24 made by S Brown to Carson
　　　　　　Brown on or about April 22, 2015.

　　　b.　　Gift of money in the amount of $4,000.00 from S Brown to Isaac Brown to
　　　　　　purchase an automobile on or about April 23, 2015.

　　　c.　　Gift of money made by T Brown to Isaac Brown in the approximate
　　　　　　amount of $9,300.00.

Plaintiffs Motion at 6, ¶ 9.  Regarding the $81,639.75 alleged gift from S Brown to her son, that

check was immediately endorsed over to and cashed by T Brown.  <u>See</u> Undisputed Material Fact

¶ 6.  Therefore, it is difficult to characterize that transaction as a gift for purposes of Plaintiffs'

denial of discharge claim, as it was ultimately a transfer between S Brown and T Brown and,

thus, remained "property of the debtor[s]."

　　　　Problems also exist with respect to the elements of Plaintiffs' claim as to the other gifts.

Importantly, to deny a discharge under Section 727(a)(2)(A), Plaintiffs must demonstrate that

Defendants, in making the transfers to their children, possessed "actual intent to defraud

creditors." <u>Marine Midland Bus. Loans, Inc. v. Carey</u> (<u>In re Carey</u>), 938 F.2d 1073, 1077

(10th Cir. 1991).  Of course, debtors rarely admit intent so courts often rely on circumstantial

evidence or on inferences drawn from a course of conduct.  <u>Mathai v. Warren</u> (<u>In re Warren</u>),

512 F.3d 1241, 1249 (10th Cir. 2008).  In such situations, courts often look to so-called "badges

of fraud" to determine intent for purposes of Section 727(a)(2).  <u>Stewart</u>, 421 B.R. 603, *3.

Among others, the "badges of fraud" factors include:  (1) whether the transfer was made

gratuitously; (2) whether the debtor continues to use the transferred property; (3) whether the

property was transferred to a family member; (4) whether the transfer was concealed; (5) whether

the transfer occurred immediately before the filing of the bankruptcy; (6) whether the conversion

of assets resulted in the insolvency of the debtor; and (7) the value of the converted assets.

<u>Carey</u>, 938 F.2d at 1077.   Some of these factors, such as a gratuitous transfer to a family

member, are clearly present.  But other factors–such as continued use of the property by

Defendants, concealment of the transfers, and insolvency of Defendants–are not present or have

not been sufficiently proven by Plaintiffs.

Moreover, although Plaintiffs seem to suggest Defendants' gifts to their sons were an

inappropriate response to Plaintiffs filing suit, Plaintiffs have not alleged any facts that

specifically connect the timing of the transfers of the Sale Proceeds with the State Court Action

in any meaningful way.[4]  For example, Plaintiffs do not assert that, at the time of the transfers of

the Sale Proceeds, Defendants had actual knowledge of Plaintiffs' objections to the OFB Lien

with respect thereto, or that Plaintiffs had made demand on Defendants for damages caused by

---

[4]For instance, the Sale Proceeds were received February 23, 2015, but the State Court
Action was not commenced until April 25, 2015, and the Accounting was filed therein on
May 19, 2015, but no dates are available for the bulk of the expenditures from the Sale Proceeds.

the OFB Lien by such times.  Viewing the *limited* facts in the light most favorable to Defendants, the Court simply cannot conclude that S Brown's transfer of $4,000 (for purposes of purchasing a vehicle) and T Brown's transfer of $9,300 (for purposes of growing a business) to their son, Isaac Brown, were done with an intent to defraud creditors.  Because more development of the facts is necessary to establish intent, summary judgment on Plaintiffs' Section 727(a)(2)(A) claim must be denied.

### B.    Summary Judgment on Plaintiffs' Section 727(a)(4)(A) Claim Must Be Denied.

Section 727(a)(4)(A) provides that a discharge may be denied where the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]"  The false oath or omission must be material and willfully made with intent to defraud.  Job v. Calder (In re Calder), 907 F.2d 953, 955 (10th Cir. 1990).  "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."  United States Trustee v. Garland (In re Garland), 417 B.R. 805, 814 (10th Cir. BAP 2009) (quoting Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir. 1984)).  A statement made in a debtor's schedules or statement of affairs, or the omission of assets from the same, may constitute a false oath for purposes of denying a discharge under Section 727(a)(4)(A).  Calder, 907 F.2d at 955.

Though it may appear to be a harsh penalty, the purpose underlying Section 727(a)(4)(A) is to "'require[ ] nothing less than a full and complete disclosure of any and all apparent interests of any kind.'"  Korte v. United States of America Internal Revenue Serv. (In re Korte), 262 B.R.

464, 474 (8th Cir. BAP 2001) (quoting Fokkena v. Tripp (In re Tripp), 224 B.R. 95, 98 (Bankr.

N.D. Iowa 1998)).  "The debtor's duty of disclosure requires updating the schedules as soon as

reasonably practical after he or she becomes aware of any inaccuracies or omissions." Doeling v.

Berger (In re Berger), 497 B.R. 47, 62 (Bankr. D. N.D. 2013) (citing Bauer v. Iannacone (In re

Bauer), 298 B.R. 353, 357 (8th Cir. BAP 2003)).

> According to the Tenth Circuit Court of Appeals:

> In order to deny a debtor's discharge pursuant to this provision, a creditor must
> demonstrate by a preponderance of the evidence that the debtor knowingly and
> fraudulently made an oath and that the oath relates to a material fact. . . . A debtor
> will not be denied discharge if a false statement is due to mere mistake or
> inadvertence.  Moreover, an honest error or mere inaccuracy is not a proper basis
> for denial of discharge.

Brown, 108 F.3d at 1294-95 (citations omitted).  However, courts consistently treat reckless

indifference to the truth, i.e., "not caring whether some representation is true or false," as the

functional equivalent of fraud for purposes of Section 727(a)(4)(A).  Freelife Int'l, LLC v. Butler

(In re Butler), 377 B.R. 895, 922-23 (Bankr. D. Utah 2006).  Failure to amend schedules after

becoming aware of their inaccuracies is additional indicia of a debtor's reckless indifference to

the truth.  Berger, 497 B.R. at 70 (citing Kaler v. Danduran (In re Danduran), 2011 WL 3664436

(Bankr. D.N.D. Aug. 19, 2011)).

> Plaintiffs identify five inaccuracies or omissions from Defendants' bankruptcy documents

that they assert are false oaths justifying a denial of Defendants' discharge under Section

727(a)(4)(A).  The alleged false oaths relate to:  (1) the status of the Chandler House as

Defendants' residence and homestead; (2) the non-disclosure of the Sandra Delane Brown

Revocable Trust which owned the Chandler House; (3) unscheduled office equipment,

furnishings, and supplies under control of T Brown; (4) the purported sale of a funeral home in Wellston; and (5) the Defendants' unscheduled vehicles.  Plaintiffs Motion at 12-13.  For the various reasons discussed below, the Court concludes Plaintiffs have not met their burden of proving the alleged false oaths were knowingly and intentionally done with the intent to defraud creditors or made with reckless indifference to the truth.

First, the Petition indicates Defendants resided in the Chandler House at the time of the bankruptcy filing, and it is listed as homestead property on Schedule A and claimed exempt on Schedule C.  See Undisputed Material Fact ¶ 17.  The Amended Petition stated the Chandler House as the residence of only T Brown.  In fact, neither Defendant resided there.  Further, the Chandler House was purchased and owned by the Sandra Delane Brown Revocable Trust, which was not originally disclosed but was disclosed when the Amended Petition was filed.  See Undisputed Material Fact ¶ 11; Defendants Response, Exhibit 4.  However, these false oaths cannot be attributed to S Brown as she did not participate in filing the Petition.  With respect to T Brown, there is evidence that he intended to live in the Chandler House as his homestead, but it was in need of repair, and therefore he was temporarily residing with one of his sons. Defendants Response, Exhibit 2 at ¶ 6, Plaintiffs Motion, Exhibit 11.

Next, Plaintiffs argue that neither the Petition nor the Amended Petition scheduled any office equipment, furnishings, or supplies, yet at his deposition, T Brown admitted to owning such assets worth between $10,000 and $20,000.  According to T Brown, S Brown had no knowledge of the assets.  See Defendants Response, Exhibit 2 at ¶ 7.  As a result, this false oath also cannot be attributed to her.  Furthermore, T Brown claims that the assets were in storage,

and he inadvertently neglected to list them on the bankruptcy schedules, which claim is

undisputed and otherwise not controverted.

Plaintiffs also claim Defendants sold a commercial building (the Wellston Funeral Home)

on July 1, 2015, and did not report the sale or disposition of proceeds in their bankruptcy filing.

Defendants responded that the property had been sold, pre-petition, in a sheriff's sale after being

foreclosed upon by Stroud National Bank in 2014. Undisputed Material Fact ¶ 1. Further,

T Brown stated that the "inclusion of a sale of that property on our 2015 [tax return] was done by

my accountant to finalize depreciation he believed we were entitled to." Defendants Response,

Exhibit 2 at ¶ 8. Accordingly, as to the Wellston Funeral Home, there is no evidence Defendants

ever received any sale proceeds that should be accounted for but were not.[5]

Next, Plaintiffs complain Defendants neglected to schedule certain vehicles. First, a 2012

Nissan that S Brown purchased in October 2014 was not scheduled on the Petition or the

Amended Petition. Although S Brown is not responsible for any omission in the Petition, her

vehicle should have been included on the Amended Petition. However, at this time, the record

contains nothing to suggest she knowingly and fraudulently failed to schedule the 2012 Nissan in

the Amended Petition.

With respect to the 2001 or 2002 Suburban purchased by T Brown between March and

May of 2015, it also was not scheduled on either the Petition or the Amended Petition. However,

according to T Brown, that vehicle was not owned by him but instead by Stems and Stones, a

---

[5]Moreover, while it may be a good practice for the assets of a debtor's solely owned entity to appear on that debtor's individual bankruptcy schedules, where the existence and ownership of the entity itself is disclosed, there is no fraud in the omission of individual assets belonging, not to the debtor, but to the debtor's entity. BTE Concrete Formwork, LLC v. Arbaney (In re Arbaney), 345 B.R. 293, 310 (Bankr. D. Colo. 2006).

business in which he has an interest.  Plaintiffs Motion, Exhibit 15.  This creates a factual issue

regarding whether the omission of the Suburban was an intentional false oath as ownership by an

entity would negate the obligation to schedule the Suburban.

Although the Court finds the inaccuracies and omissions in Defendants' schedules and

statement of financial affairs troubling, it is not convinced Plaintiffs, at this time, have met their

burden of proving the discrepancies rise to the level of false oaths or accounts made intentionally

and fraudulently.  As indicated above, T Brown filed the joint bankruptcy case without

S Brown's knowledge, utilizing the power of attorney she had executed some years earlier.

Undisputed Material Fact ¶ 16.  In fact, S Brown did not know about the bankruptcy filing until

shortly before the Section 341 meeting.  This fact alone negates much of Plaintiffs' purported

wrongdoing by S Brown.

Additionally, there is evidence to support the Court's conclusion that an issue of fact

exists with respect to the requisite fraudulent intent of T Brown.  In response to Plaintiffs

Motion, T Brown submitted an affidavit (the "Affidavit") that Plaintiffs have not controverted.

The Affidavit states in pertinent part as follows:

> During the entire time described above, I was suffering an "adult brain disorder,"
> sleep apnea, high blood pressure, uncontrolled Type II diabetes with kidney
> complications, chronic kidney disease, transient ischemic attack involving my
> right carotid artery and migraine headaches, all of which culminated in a stroke I
> suffered on approximately October 2, 2015.  Many of the things I did described
> above, I do not remember.

Defendants Exhibit 2 at ¶ 9.  This uncontroverted statement necessarily raises issues of fact with

respect to T Brown's intent.

25

Summary judgment is not appropriate when different ultimate inferences may be drawn from the facts. Davis v. Weddington (In re Weddington), 457 B.R. 102, 111 (Bankr. D. Kan. 2011) (citing Sec. Nat. Bank v. Belleville Livestock Comm'n Co., 619 F.2d 840, 847 (10th Cir. 1979)). Because the facts here are subject to multiple interpretations as to intent, the Court concludes Plaintiffs are not entitled to summary judgment on their Section 727(a)(4)(A) claim against T Brown or S Brown.

### C. Summary Judgment on Plaintiffs' Section 727(a)(5) Claim Must be Denied with Respect to S Brown but is Granted with Respect to T Brown.

A bankruptcy court has broad power under Section 727(a)(5) to decline to grant a discharge where a debtor inadequately explains a shortage, loss, or disappearance of assets. Carlson, 2008 WL 8677441 at *5 (10th Cir. Jan. 23, 2008) (quoting In re D'Agnese, 86 F.3d 732, 734 (7th Cir. 1996)). Section 727(a)(5) provides in pertinent part:

(a) The court shall grant the debtor a discharge, unless —

. . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

§ 727(a)(5). The purpose underlying Section 727(a)(5) is to ensure that, prior to being granted a discharge, the debtor provides a full and accurate picture of his financial transactions and activities prior to bankruptcy, thereby preventing the burden of discovering, locating, and recovering assets from being shifted to the trustee and creditors. Crane v. Morris (In re Morris), 302 B.R. 728, 742-43 (Bankr. N.D. Okla. 2003). A prima facie case under Section 727(a)(5)

26

exists where a creditor shows that there was an unusual and unexplained disappearance of assets shortly before the debtor filed bankruptcy. Carlson, 2008 WL 8677441 at *5.

After the objecting party demonstrates a disappearance of assets, Section 727(a)(5) requires the debtor to come forward with "a satisfactory explanation which must consist of more than vague, indefinite and uncorroborated assertions by the debtor." Carlson, 2008 WL 8677441 at *5 (quoting Damon v. Chadwick (In re Chadwick), 335 B.R. 694, 703 (W.D. Wis. 2005)). In other words, a debtor's explanation regarding loss of assets should satisfy two concerns.  It must be supported by at least some corroboration, and that corroboration must be sufficient to eliminate the need for any speculation as to what happened to the assets." In re Simmons, 810 F.3d 852, 859 (1st Cir. 2016) (quoting Aoki v. Atto Corp. (In re Aoki), 323 B.R. 803, 817 (1st Cir. BAP 2005)).

Courts have generally determined that what constitutes a satisfactory explanation under Section 727(a)(5) is left to the sound discretion of the court. See Martinez v. Sears (In re Sears), 565 B.R. 184, 192 (10th Cir. BAP 2017) (citing Blackwell Oil Co. v. Potts (In re Potts), 501 B.R. 711, 726 (Bankr. D. Colo. 2013) (and cases cited therein)). But, a determination as to whether an explanation is satisfactory *does not* take into account whether what happened to the assets was improper. Carlson, 2008 WL 8677441 at *5 (quoting Shappell's Inc. v. Perry (In re Perry), 252 B.R. 541, 550 (Bankr. M.D. Fla. 2000)). That is because it is not necessary for a creditor to demonstrate a fraudulent intent on debtor's part for purposes of denying a discharge under Section 727(a)(5). Carlson, 2008 WL 8677441 at *5.

In their Motion, Plaintiffs allege:

> In the present case, [Defendants] have the burden of establishing the loss of the sale proceeds ($143,468.09).  A substantial portion was given to the children of [Defendants].  The remaining funds are generally unaccounted for.  In particular, [Defendants] arbitrarily claim that between $30,000.00 and $40,000.00 was lost in gambling.  However, [Defendants] have failed to produce any documents, records of corroboration of the losses.

Plaintiffs Motion at 11.  Although Plaintiffs' argument in this regard lumps Defendants together for purposes of their Section 727(a)(5) claim, the Court finds that Plaintiffs' claim against S Brown must be analyzed separately from their claim against T Brown.

### S Brown

On April 22, 2015, S Brown purchased a cashier's check made payable to Carson Brown in the amount of $81,639.24, which amount included her entire share of the Sale Proceeds.  In his sworn Affidavit, T Brown declared that Carson Brown immediately endorsed the check over to him and he then cashed the check.  See Undisputed Material Fact ¶ 6.  Thus, S Brown has satisfactorily explained the "disappearance" of her share of the Sale Proceeds, and her explanation has been corroborated by T Brown.  As a result, Plaintiffs are not entitled to summary judgment on Plaintiffs' Section 727(a)(5) claim against S Brown.

### T Brown

While the argument section of Defendants Response asserts Plaintiffs have no Section 727(a)(5) claim against S Brown because she has fully accounted for the claimed loss of assets, see Defendants Response at 9, Defendants Response is completely silent with respect to T Brown's failure to account for the loss of assets.  Instead, Defendants Response offers only the general defense that T Brown suffered from various medical issues "during the time period

complained of by Plaintiffs," which impacted "his mental competency in performing the actions

he admits he did or must have committed."  Defendants Response at 11.  As an explanation for

T Brown's loss of assets, it is sorely insufficient as it literally explains nothing about how, when

or why the Sale Proceeds were completely expended prior to the Petition Date.  The Affidavit

declares T Brown used $30,000 of the proceeds in question to purchase the Chandler House and

lost between $30,000 and $40,000 gambling at various Indian casinos.  However, there are no

records of the gambling losses, and the remainder of the proceeds remain completely

unaccounted for.  Once Plaintiffs met their initial burden of establishing a loss or reduction of

assets, the burden of satisfactorily explaining the loss or deficiency shifted to T Brown.  He failed

to offer any explanation whatsoever with respect to over one-half of the Sale Proceeds that

Plaintiffs argue disappeared.

     Culpability under Section 727(a)(5) is on a strict liability basis as, short of explaining

where the assets went, it contains ***no defense to an unexplained*** loss or deficiency.  Crocker v.

McWhorter (In re McWhorter), 557 B.R. 543, 558 (Bankr. E.D. Ky. 2016); United States Trustee

v. Ross (In re Ross), 2013 WL 414474 (Bankr. N.D. Ohio 2013).  Moreover, incompetency due

to health problems, chemicals or mental illness alone is not sufficient to overcome an otherwise

unsatisfactory explanation of a loss of assets.  Ross, 2013 WL 414474 (citing Dolin v. N.

Petrochemical Co., 799 F.2d 251, 253 (6th Cir. 1986)).  T Brown's purported explanation is

nothing more than an excuse for the loss as it is a "'vague explanation' unsupported by

'documentation or some other corroboration,'" and is plainly inadequate to allow proper

investigation into the circumstances surrounding the loss.  Redmond v. Karr (In re Karr), 442

B.R. 785, 800 (Bankr. D. Kan. 2011).

Case: 16-01041    Doc: 30    Filed: 06/23/17    Page: 30 of 31

The Court concludes Plaintiffs are entitled to summary judgment on their Section 727(a)(5) claim against T Brown based on his failure to satisfactorily explain the undisputed loss of the Sale Proceeds.

**CONCLUSION**

Plaintiffs are pre-Petition creditors of Defendants who filed a proof of claim evidencing their claim against Defendants, which claim has now been allowed. Therefore, they have the requisite standing to bring this adversary proceeding, which means Defendants Motion must be denied.

Plaintiffs Motion is DENIED IN PART and GRANTED IN PART:

a. Summary judgment on their Section 523(a)(2)(A) claim is DENIED because Plaintiffs did not provide the judgment roll as required by Oklahoma law governing issue preclusion.

b. Summary judgment with respect to Plaintiffs' Section 727(a)(2)(A) and (a)(4) claims against both S Brown and T Brown is DENIED because Plaintiffs failed to prove the requisite intent.

c. Plaintiffs' Section 727(a)(5) claim against S Brown is DENIED because she adequately accounted for all of her share of the Sale Proceeds.

d. Plaintiffs' Section 727(a)(5) claim against T Brown is GRANTED because he failed to explain the proven disappearance of a large portion of the Sale Proceeds.

A separate judgment will be entered. Unless Plaintiffs dismiss their claims on which summary judgment was not granted on or before July 10, 2017, the Court will enter a scheduling order setting this matter for trial.

IT IS SO ORDERED.

# # #